SAMUEL ISAACS, plaintiff in error, *v.* LUKE LEE STEEL, defendant in error.

*Error to Montgomery.*

In equity, a junior patent, or Register's Certificate of purchase of a tract of land, will prevail over the elder one, if the right on which it is based is prior in point of time to that on which the elder patent, or certificate, is founded.

In construing statutes, the rule that contemporaneous exposition is strongest in the law, is to be regarded.

The right to preemption, under the Acts of Congress of May 29, 1830, and of June 19, 1834, extended to lands which had been offeied for sale previous to the passage of these acts; and a sale, by private entry, of a tract of land upon which a settler had a preemption right, was illegal and void; and a court of equity will perpetually enjoin a purchaser from proceeding, in ejectment, against a person who has subsequently purchased the same land under his preemption right.

Under the prayer for general relief, a court of chancery may decree that which is not specifically prayed for, and grant more than is asked.

THIS cause was heard in the Court below, before the Hon. Sidney Breese. In this Court it was submitted at the last term.

M. McCONNEL furnished a written argument for the plaintiff in error, and J. B. THOMAS argued on the same side.

SCHUYLER STRONG, JAMES SHIELDS, and J. S. GREATHOUSE, for the defendant in error.

BREESE, Justice, delivered the opinion of the Court:

The record in this cause shows that at the September term, 1836, of the Montgomery Circuit Court, Isaacs commenced his action of *ejectment* against Steel, to recover the possession of the east half of the north-west quarter of section twenty-three, in township eight north, of range four west of the third principal meridian. Steel, after entering into the consent rule, pleaded not guilty, and the cause was continued to the next March term, when the defendant, Steel, filed his bill for an injunction, stating therein, that in 1824, he settled on the premises in controversy, and built a house and outhouses on the land, and had a part of it in cultivation, and has continued to reside on it and cultivate it, and add to the improvements, every year since; that, by virtue of his occupancy and cultivation, he was, and is, entitled, under the laws of the United States, to the right of preemption to the land; that after the passage of the act of Congress of the 19th of June, 1834, granting preemptions to settlers on the public lands, Isaacs, whom he makes defendant in the bill, applied, some time in that year, at the land office at Edwardsville, where the land was subject to be purchased of the United States, to enter the same, being fully apprised of the situation and rights of the complainant relative to the land,— that he had occupied and cultivated the same, so as to entitle him to the right of preemption,—and by fraud and misrepresentation, stating that no one resided on the land, or was cultivating it, or claimed a right of preemption to it, induced the officers of the land office, appointed to sell lands at the Edwardsville land office, to permit him to enter it, and obtained a duplicate therefor, which is in his possession; that afterwards, on the 25th day of December, 1835, the complainant applied at the same land office, to enter said land, under the preemption act of the 19th of June, 1834, and after making satisfactory proof, as required by that act, of his right of preemption, he was permitted to reenter the same land, under and by virtue of said act; and he obtained a duplicate receipt therefor, which he makes an exhibit in the bill. He then states that Isaacs is proceeding by action of ejectment, on the common law side of the Court, to dispossess him of the land, by virtue of his having the oldest duplicate, thus fraudulently obtained. He also states, that since the commencement of the action of ejectment, duplicates of the receipts given to said Isaacs, and to himself, were forwarded to the General Land Office, together with the evidence of

the right of preemption which he made to enable him to enter the land, and that the Commissioner of the General Land Office, after inspecting the same, instructed the land officers at Edwardsville to return Isaacs his money, and that those officers sent a request to Isaacs to come and receive back his money. The bill then prays for an injunction; that Isaacs may answer; that the duplicate to him may be vacated, set aside, and held for naught, and for general relief.

This application was continued under advisement until the next September term, when an injunction was granted. At the same term, Isaacs put in a general demurrer to the bill, which, after argument, was overruled. He then asked and obtained leave to withdraw the demurrer and answer, but, on the same day, it was agreed by the parties, that this leave to withdraw the demurrer and file an answer, should be set aside, Isaacs preferring to abide by the demurrer. Whereupon the Court entered a decree perpetually enjoining him from proceeding in the ejectment, and that he pay the costs.

From this decree Isaacs prosecutes a writ of error to this Court, and it is assigned as error,

*First.* In deciding that the complainant, by his bill, brought himself within the provisions of the act of the 19th of June, 1834;

*Second.* In deciding that the act of Congress of that date, commonly called the preemption act, was applicable to lands proclaimed for sale, and in market, subject to private entry, at and before the passage of that act;

*Third.* In overruling the demurrer to the bill; and,

*Fourth.* In granting a decree in favor of the complainant, for more than was prayed for, and for what was not asked by the bill.

Neither of the contending parties have a patent for the land, each claiming under a certificate, called in the bill a duplicate. This Court has decided (1) that these certificates are raised to the dignity of patents, and that the oldest one must prevail in a court of law. In equity, a junior patent or certificate will prevail over the elder one, if the right on which it is based is prior in point of time to that on which the elder patent or certificate is founded.

If the complainant, then, had the prior right, though possessed of the junior certificate, it will be protected in a court of equity. To determine whether he had or not, will depend upon the construction to be given to the acts of Congress of the 29th of May, 1830, called the preemption act, and that of the 19th of June, 1834, reviving the former law, its title being, " *An Act to revive the act entitled ' An Act to grant Preemption Rights to Settlers on the Public Lands, approved May 29th, 1830.' *" This act of the 29th of May, 1830, provides, in the first section, " That every settler or occupant of the public lands prior to the passage of the act, who

(1) Bruner *v.* Manlove *et al.,* 1 Scam. 156.

Isaacs v. Steel.

is now in possession, and cultivated any part thereof in the year one thousand eight hundred and twenty-nine, shall be, and he is hereby, authorized to enter with the register of the land office for the district in which such lands may lie, by legal subdivisions, any number of acres not exceeding one hundred and sixty, or a quarter section, to include his improvement, upon paying to the United States the then minimum price of said land : *Provided,* however, that no entry of reserved lands shall be made," &c.

The second section prescribes the mode of division between two or more settlers on the same tract. The third section prescribes the proof which shall be made to the register and receiver of settlement or improvement, and prohibits the assignment of the right of preemption. The fourth section provides, " that this act shall not delay the sale of any of the public lands of the United States, beyond the time which has been, or may be appointed for that purpose, by the President's proclamation ; nor shall any of the provisions of this act be available to any person or persons, who shall fail to make the proof and payment required before the day appointed for the commencement of the sales of lands, including the tract or tracts on which the right of preemption is claimed ; nor shall the right of preemption contemplated by this act, extend to any land reserved or appropriated." And the fifth and last section limits its operation to one year from and after its passage.

In construing statutes, the maxim, " *Contemporanea expositio cst fortissima in lege,*" is to be regarded. What then was the exposition given to this act of the 29th of May, 1830, by that department of the Government to whose care its execution was confided, and by the community at large ? In the second part of the Land Laws, at page 539, will be found the instructions from the General Land Office to the various land officers in the United States, in the form of a circular, enclosing a copy of the act we are now considering. The several land officers are, by that circular, bearing date June 10, 1830, instructed that " All lands, not otherwise appropriated, of which the township plats are, or may be on file in the register's office, prior to the expiration of the law, are subject to entry under the act." To this interrogatory of one of the registers, " Does the act contemplate preemption rights on lands other than those never offered for sale ? " he is referred for answer, to the above instructions. In the circular from the same department, of the date of the 14th of Sept., 1830, (1) to the land officers, these instructions are found : " As the law grants to any settler on the public lands, who was in possession thereof at the date of the act, and cultivated the same in 1829, a right of preemption to lands which, having been offered at public sale, were subject to private entry at the same date, and has provided the term of one year for its application ; the question arises, whether the ordinary private entries

(1) 2 U. S. Land Laws 545.

Isaacs *v.* Steel.

of such lands are to be suspended until the 29th of May, 1831, when the occupant's claims shall have been proved and filed, or whether the ordinary private entries can proceed at the hazard of interfering with the occupant within the year. This being a difficulty against which the lawmakers omitted to provide, and it not being believed to be the intention of its framers, that the ordinary private entries should be suspended for the term of one year, we must, therefore, so act as to make the law available to the occupant, to its full extent as to time, and also permit the ordinary private entries to proceed. It is, therefore, to be expressly understood, that every purchase of a tract of land at ordinary private sale, to which a preemption claim shall be proved and filed according to law, at any time prior to the 30th of May, 1831, is to be either null and void, (the purchase money thereof being refundable under instructions hereafter to be given,) or subject to any future legislative provisions."

Again, on the 17th of Feb., 1831, in reply to one of the registers of the land office, the Commissioner of the General Land Office says, (1) in reference to the preemption law of May 29, 1830, " That act grants preemption rights in virtue of cultivation in 1829, and possession at the date of the act, to all lands which have been surveyed and not appropriated, and requires that its provisions shall not delay the sale of any public lands." Again : " But the lands subject to private entry, at the date of the act, were also made subject by the law, to the preemption privilege throughout the whole term of its operation, and no authority of the law existed to compel the preemptioner to prove his right before the utmost limit of the term, 29th of May, 1831, a whole year." In the same letter, he says, " I would observe that many cases exist where lands have been sold at private sale, to which the right of preemption has been since proved, and will be sustained under the law." (2)

Again, on the 23d of May, 1831, the Commissioner, in his instructions to one of the land offices, says, " The preemption law of 29th of May, 1830, vests in the individual who cultivated in 1829, and occupied at the date of the act, the right of preemption in the tract so cultivated and occupied ; and admits of his producing his proof of such right, at any time within one year from the date of the act ; consequently, the private sale of any land within such year, to which the right of preemption is satisfactorily shown to exist, is virtually annulled by the preemption law. All cases of sales interfering with preemptions, are to be reported to this office," &c. (3)

Again, on the 15th of Feb., 1832, the land officer says, that the spirit and intention of the act of 29th of May, 1830, would make it applicable to lands even entered and relinquished. (4) In giving his instructions under the act of the 5th of April, 1832, supple-

(1) 2 U. S. Land Laws 549.    (2) 2 U. S. Land Laws 550.
(3) 2 U. S. Land Laws 533.    (4) 2 U. S. Land Laws 560.

mentary to the several laws for the sale of public lands, by direction of the Secretary of the Treasury, in order to prevent collision between the ordinary private entries, and the preemption rights intended to be secured to housekeepers, by the act, the form of an affidavit was furnished, which the applicant at private sale was to make, setting forth, that the tract applied for was not subject to any claim of preemption right. (1)

This is all the legislation of Congress, and the construction put upon it by the General Land Office, (in which two Attorneys General of the United States, and the Secretary of the Treasury concurred,) which it is necessary to notice, prior to the passage of the act of the 19th of June, 1834.

It is true, their opinions and instructions have no binding force, as authority, upon the courts, and they are only cited to show what was the practice of the Government under the act of 1830 ; what construction it received by the several departments thereof.

With a full knowledge of this practice, of this construction put upon it, by the highest officers of the Government, Congress revived it by the act of the 19th of June, 1834. If this construction had been supposed by the legislative department of the Government, to be erroneous, it is reasonable to suppose it would have corrected it, in the subsequent act, by the use of some words restricting its operation to lands not in market, and subject to entry at private sale. An examination of this act will show that they have not done so ; the terms of it being as broad and as comprehensive as those used in the act of the 29th of May, 1830. The first section provides, that every settler or occupant of the public lands prior to the passage of this act, who is now in possession and cultivated any part thereof, in the year 1833, shall be entitled to all the benefits and privileges provided by the act entitled an act to grant preemption rights to settlers on the public lands, approved May 29th, 1830, and the said act is hereby revived, and shall continue in force two years from the passage of this act, and no longer. The second section allows a choice of quarter sections under certain circumstances. The third and last section provides, that all persons residing on the public lands, and cultivating the same prior to the year 1829, and who were deprived of the advantages of the law passed on the 29th of May, 1830, by the construction placed on said law by the Secretary of the Treasury, he and they are hereby authorized to enter at the minimum price of the Government, one quarter section of the public lands within said land district.

In enacting this law, with a full knowledge of the construction placed on the one which it revived, Congress must be supposed to have adopted that construction and sanctioned it, as no restrictive clauses are to be found in the last mentioned act. The same construction was also adopted by the community in general.

(1) 2 U. S. Land Laws 563.

It is very manifest, if Congress intended to confine the act of 1834, to lands not in market, they would, knowing the practice under the act of 1830, have used language not susceptible of this construction, so as to limit it to such lands only. The subject they were legislating upon, was the whole public domain, not any particular parts of it, and they designed to adopt a rule in regard to it, which should be general and coextensive with the subject matter of the law itself. They declare that all lands not appropriated, shall be subject to preemption, and by one law continue the right for one year, and by the other, for two years. Congress must have known, when passing these acts, the general condition of those who settled upon the public lands ; that they were for the most part poor ; had exhausted their means in getting to them ; had expended their labor in improving them, and to protect them from the rapacity of those who might desire to appropriate their toil and labor to themselves, one and two years of time was granted them. The settler was thus made secure in his possession for that time, and if, before its expiration, he made the required proof, and paid the money, he acquired a right against all the world.

There being, then, nothing in the words used in any part of the act of 1830 ; nothing in the context ; nothing in its obvious meaning and intention to restrict it to any class of the public lands, we think that the construction put upon it soon after its passage, with the general assent of the community thereto, conspire to establish its meaning so as to embrace all the public lands. By this construction, the whole act has force, and the maxim, that a statute shall be construed " *ut magis valebat quam pereat*," prevails.

As the act of the 19th of June, 1834, under which the defendant in error claims, merely revives that of 29th of May, 1830, it is unnecessary to make any comments upon it. The instructions furnished the land offices by the head of the Treasury Department, after the passage of that act, were the same as those given as their guide when acting under that of 1830. They will be found at length in the second volume of the Land Laws, at pages 590, 591. They direct that the private entries must proceed as usual ; that if preemption claims interfere with them, and are duly established, they must be allowed, and orders for repayment will be issued to the purchaser by private entry, and that such purchases are null and void. Such applicants were also required to file an affidavit that the land applied for, was not subject to any preemption claim.

If the construction given to these acts, should be thought not to be correct, it having been acquiesced in for so long a time, and so many titles obtained by virtue of it, and the laws themselves having expired by their own limitation, it would be useless now to disturb it. As to the equity of this case, it seems to be manifestly in favor of the defendant in error. The bill states, that he went upon the land in 1824 ; built a house upon it ; improved it ; added to the improvements every year : and that all this was known to the plaintiff

Buckmaster *et al. v.* Carlin.

in error; and that he, by fraudulent representations to the land officers, that no person claimed it, entered it. These statements are confessed by the demurrer, and make a strong case in favor of the defendant in error. The demurrer admits the facts charged, and goes to the merits of the case, and is always in bar.

As to the last error assigned, we do not doubt, that under the prayer for general relief, a court of chancery may decree that which is not specifically prayed for, and grant more than is asked. The decree in this case was, that the plaintiff in the action at law, the plaintiff in error here, be perpetually enjoined from proceeding at law, to recover the possession of the premises. This is not repugnant to, or inconsistent with the prayer of the bill. The decree is, therefore, affirmed with costs.

*Decree affirmed.*